UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

**PHILIP S. PALMERI, Individually
and as Administrator of the Estate of
TRACEY L. PALMERI, Deceased,**

                                *Plaintiff,*       Civil Action No.
                                                    1:24-cv-00556

    *vs*.

**NL INDUSTRIES, INC.**

                                *Defendant*.
_____

### NL INDUSTRIES, INC.'S REPLY MEMORANDUM OF LAW
### IN FURTHER SUPPORT OF MOTION TO DISMISS

                                                                        **BARCLAY DAMON LLP**
                                                                     *Attorneys for Defendant*
                                                                     *NL Industries, Inc.*
                                                                     The Avant Building - Suite 1200
                                                                     200 Delaware Avenue
                                                                     Buffalo, New York  14202-2150
                                                                     Telephone: (716) 856-5500
                                                                     Email: acarroll@barclaydamon.com

Andrew J. Carroll, Esq.
*Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

I.   PLAINTIFF REPEATEDLY MISAPPLIES THE CORRECT LEGAL STANDARDS
     UNDER CPLR 214-C. .................................................................................................... 3

     a. Plaintiff's CPLR 214-c(2) Analysis is Wrong. ....................................................... 3

     b. Plaintiff's CPLR 214-c(4) Analysis is Flawed. ...................................................... 6

     c. Plaintiff's Property Damage Claims Are Subject to Dismissal Regardless of Whether
        CPLR 214-c(2) or CPLR 214-c(4) is Applied. ..................................................... 11

II.  PLAINTIFF'S FAILURE TO STATE A CAUSE OF ACTION. ........................................... 11

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abbatiello v. Monsanto Co.*,
  522 F. Supp. 2d 524 (S.D.N.Y. 2007) .................................................................................. 12

*Andres, et al. v. Town of Wheatfield*,
  2020 U.S. Dist. LEXIS 261654 (W.D.N.Y. March 13, 2020) ................................................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 11, 12, 13

*Baldi v. Rocky Point Union Free Sch. Dist.*,
  2022 N.Y. Misc. LEXIS 1358 (Sup.Ct. N.Y. Cnty. 2022) ....................................................... 10

*Bano v Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ................................................................................................ 4, 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 11, 12, 13

*Burger v. Union Carbide Corp.*,
  304 A.D.2d 700 (2nd Dept. 2003) .......................................................................................... 7

*Castiglione v. E.A. Morse & Co. Inc.*,
  22 A.D.3d 934 (3d Dept. 2005) ............................................................................................... 5

*Crossman v. Harding Indus. Tool & Master Chemical Corp.*,
  222 A.D.2d 1081 (4th Dept. 1995) .......................................................................................... 4

*Dugan v. Schering Corp.*,
  86 N.Y.2d 857 (1995) .......................................................................................................... 5, 6

*Garner v. NGC Bodily Injury Trust*,
  2012 U.S. Dist. LEXIS 115878 (W.D.N.Y. 2012) ................................................................... 10

*Giordano v. Market Am., Inc.*,
  15 N.Y.3d 590 (N.Y. 2010) ..................................................................................................... 7

*Glod v. Ashland Chem. Co., Div. of Ashland Oil*,
  145 Misc. 2d 200 (Sup.Ct. Oswego Cnty. Aug. 22, 1989) ..................................................... 10

*J.D. v. United States*,
   2011 U.S. Dist. LEXIS 8360 (S.D.N.Y. Jan. 28, 2011) ............................................................. 5

*Martin v. 159 W. 80 St. Corp.*,
   3 A.D.3d 439 (App. Div. 2004) ................................................................................................. 4

*Pasternack v. Lab of Am. Holdings*,
   59 N.E.3d 485 (N.Y. 2016) ...................................................................................................... 12

*Pompa v. Burroughs Wellcome Co.*,
   259 A.D.2d 18 (App. Div. 1999) ............................................................................................... 4

*Reed v. Corning*, Inc.,
   351 F. Supp. 3d 342 (W.D.N.Y. 2018) .................................................................................... 12

*Stark v. Howe Sound Co.*,
   148 Misc. 686 (Sup.Ct. Chemung Cnty. 1933) ....................................................................... 13

*Sweeney v. Gen. Print. Inc., Div. of Sun Chem. Corp.*,
   210 A.D.2d 865 (3d Dept. 1994) ............................................................................................... 5

*Trisvan v. Heyman*,
   305 F. Supp. 3d 381 (E.D.N.Y. 2018) ....................................................................................... 7

*Wetherill v. Eli Lilly & Co. (In re N.Y. County DES Litig.)*,
   89 N.Y.2d 506 (N.Y. 1997)) ............................................................................................... 8, 10

*Whitney v. Quaker Chemical Corp.*,
   90 N.Y.2d 845 (1997) ................................................................................................................ 5

*Wild v. Hayes*,
   68 A.D.3d 1412 (3d Dept. 2009) ....................................................................................... 12, 13

*W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*,
   815 F.2d 188 (2d Cir. 1987) .................................................................................................... 13

**Rules**

CPLR § 214-c ............................................................................................................................ 1, 3, 5

CPLR § 214-c(2) ........................................................................................................................ 1-6, 11

CPLR § 214-c(4) ..................................................................................................................... 1-3, 6-11

**PRELIMINARY STATEMENT**

Plaintiff's opposition to Defendant NL Industries, Inc.'s ("NL") Motion to Dismiss (the "Opposition") concedes all facts necessary to dismiss the Complaint as time-barred under the applicable statutes of limitations. Plaintiff concedes (i) that the Plaintiff and Decedent knew there was radioactive material present at 739 Upper Mountain Road no later than 2017, (ii) that Plaintiff filed a different lawsuit against parties other than NL alleging that this known radioactive material was harmful to human health no later than 2017, (iii) that Decedent was diagnosed with breast cancer no later than January 2018, and (iv) that the Complaint in this action was not filed until April 2024. Because Plaintiff admits that the Complaint was filed more than six years after discovery of Decedent's breast cancer, and more than six years after discovery of the toxic substance that Plaintiff alleges caused that breast cancer, the Complaint must be dismissed.

In the Opposition, Plaintiff argues that even though both the breast cancer and the toxic substance that allegedly caused it have been known for more than six years, Plaintiff can restart the statute of limitations at will: (i) by simply targeting a different defendant for the same toxic substance that has been known for more 6 years, or (ii) by picking a different point in the progression of the breast cancer injury that has been known for more than 6 years. Both positions are contrary to the text of CPLR 214-c, the cases interpreting CPLR 214-c, and the purpose of a statute of limitations.

Plaintiff argues that the matter is timely under CPLR § 214-c(2) and CPLR § 214-c(4). As to CPLR 214-c(2), Plaintiff first attempts to insert a "causation" requirement into that section that does not exist. In reality, § 214-c(2) clearly and unambiguously provides that the three-year limitation period begins running upon Plaintiff's discovery *of the injury* itself, not upon discovery of the alleged *cause of the injury*. Further, in an apparent attempt to assert the existence of an

1

unpled "second injury" and restart the statute of limitations, Plaintiff argues that the injury that triggered the statute of limitations in this case was not Decedent's 2018 breast cancer diagnosis, but was instead a later point in 2020 when doctors determined that the breast cancer had developed into progressive, *metastatic* breast cancer.  However, the progression of the injury from "breast cancer" to "metastatic breast cancer" does not constitute a separate and distinct new injury that would give rise to a new statute of limitations.  Since the primary condition of breast cancer was diagnosed no later than January 2018, the three-year statute of limitations in CPLR 214-c(2) based on the date of injury expired no later than January 2021.

Nor does CPLR 214-c(4) save the matter from dismissal. As set forth in NL's moving papers, CPLR 214-c(4) provides an additional one year from the alleged discovery of the "cause" of the condition to bring suit, but only if certain conditions are met.

First, Plaintiff has failed to satisfy the prerequisite requirements necessary to avail himself of the benefit of this extension under CPLR 214-c(4) because the Plaintiff must be able to show that technical, scientific or medical knowledge or information sufficient to ascertain the cause of the injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized.  In this case, Plaintiff would have to show it was not scientifically knowable that radiological exposure could lead to breast cancer during the three-year period following Plaintiff's 2018 cancer diagnosis.  Plaintiff does not deny that the link between radiological material and cancer was known in 2018, and Plaintiff's own pleadings refer to EPA statements about cancer risks on the property within three years of the injury.

Second, the "cause" of the injury refers to the toxic substance allegedly causing the injury, not which defendant Plaintiff has alleged is legally liable for harms allegedly caused by the toxic

substance. There is no dispute that Plaintiff is alleging that breast cancer was caused by the radiological contamination that has been known about since 2017. Plaintiff's own pleadings and Opposition thus conclusively show that even if CPLR 214-c(4) were applicable, which it is not, the claims would still be untimely because, as a matter of law, Plaintiff discovered the cause of her breast cancer as early as January 2018, and certainly no later than January 2021. Regardless of which trigger date is used, Plaintiff's claims are untimely under CPLR 214-c(4).

## ARGUMENT

**I.  PLAINTIFF REPEATEDLY MISAPPLIES THE CORRECT LEGAL STANDARDS UNDER CPLR 214-C**

The Opposition repeatedly conflates and otherwise misapplies the relevant legal standards under CPLR 214-c.

    *a.  Plaintiff's CPLR 214-c(2) Analysis is Wrong*

Plaintiff first relies on CPLR 214-c(2) in an effort to suggest that Plaintiff's survivor and wrongful death claims are timely, by advancing two flawed arguments: (i) first, that the claims are timely under CPLR 214-c(2) because "Plaintiff was not made aware that the cause of his wife's cancer was environmentally related" until September 2021 when they spoke to medical providers at Roswell Park (*See* ECF 9 at pp. 4-6); and second, that the claims are timely because Decedent was not diagnosed with "progressive metastatic breast cancer" until October 2020. *Id*. at p. 7

The first argument as to awareness of the cause of the medical condition is wrong because Plaintiff conflates discovery of Decedent's breast cancer, with discovery of the alleged cause of that injury, which is not a relevant consideration under CPLR 214-c(2). The Statute of Limitations under CPLR 214-c(2) begins to run "from the date of discovery ***of the injury*** by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." CPLR 214-c(2). (emphasis added). The trigger

for the commencement of the statute under CPLR 214-c(2) is the diagnosis or discovery of the injury itself, not the cause of the injury. *See, e.g., Bano v. Union Carbide Corp.*, 361 F.3d 696, 709 (2d Cir. 2004); *Martin v. 159 W. 80 St. Corp.*, 3 A.D.3d 439 (1st Dept. 2004) ("The three-year statute of limitations of CPLR 214-c(2) runs from the time a plaintiff discovers an injury, that is, from the time she realizes that she has the physical manifestations of illness, regardless of when she learns of the cause."); *Pompa v. Burroughs Wellcome Co.*, 259 A.D.2d 18, 22 (3rd Dept. 1999) ("[A]n injury refers to 'an actual illness, physical condition or other similarly discoverable objective manifestation of the damage [or symptoms] caused by previous exposure to an injurious substance' . . . and ***not to the discovery of the nonorganic, nonbiological cause of the symptoms or the particular toxic substance to which plaintiff was exposed***.") (emphasis added; internal citations omitted); *Crossman v. Harding Indus. Tool & Master Chemical Corp.*, 222 A.D.2d 1081 (4th Dept. 1995) (statute of limitations runs from discovery of the injury as opposed to discovery that the injury was caused by a particular chemical). Plaintiff's contention that "the three-year statute of limitations embodied in CPLR 214-c(2) does not expire until September 2024" (ECF 9 at p. 4) is flawed because it focuses on Plaintiff's discovery of the cause of injury, not discovery of the injury itself. There is no dispute that decedent was diagnosed and made aware of her breast cancer diagnosis as early as January 2018[1]. *See* ECF 9-2 at pars. 3, 10, 13. Plaintiff and Decedent had until January 2021 to bring a claim against NL under CPLR 214-c(2) and they failed to do so.

Separately, Plaintiff's attempt to invoke CPLR 214-c(2) by arguing that the relevant injury is Ms. Palmeri's metastatic breast cancer is unavailing. ECF 9 at p. 7 ("Plaintiff and his wife did not discover her injury of metastatic breast cancer . . . until October 22, 2020.") Any argument that

---

[1] Although Plaintiff's Complaint alleged Plaintiff was diagnosed with metastatic breast cancer in December 2017, Plaintiff's Opposition now suggests that the diagnosis of breast cancer was not until January 2018. This distinction is irrelevant as Plaintiff's claims are time-barred regardless of whether the diagnosis occurred in December 2017 or January 2018.

4

CPLR 214-c(2) saves Plaintiff's claims because Ms. Palmeri was diagnosed with breast cancer, and not diagnosed with metastatic breast cancer until October 2020, is meritless. ECF 9 at p. 7.

Plaintiff ignores that the "primary condition" on which Plaintiff's claim is based is breast cancer, which was initially diagnosed as stage I in January 2018. *See* ECF 9-2 at pars. 3, 10. The metastasis of Plaintiff's breast cancer is a mere outgrowth or aggravation of the primary condition. *See* National Cancer Institute, [2020][2]. A metastasis of the primary cancer does not restart the Statute of Limitations or provide for a different accrual date. Both the New York Court of Appeals and the Second Circuit have recognized that the worsening of a plaintiff's symptoms or condition over time does not alter or postpone the accrual date. All that is necessary to start the limitations period is plaintiff's awareness of the primary condition for which damages are sought. *See e.g., Bano v Union Carbide Corp.*, 361 F.3d 969 (2d Cir. 2004), citing *Whitney v. Quaker Chemical Corp.*, 90 N.Y.2d 845, 847 (1997) (mem.); *see also Castiglione v. E.A. Morse & Co. Inc.*, 22 A.D.3d 934 (3d Dept. 2005). In particular, multiple courts have held that aggravation, acceleration, **or metastasis** of a disease, including cancer, does not represent a separate and distinct injury that would save Plaintiff's claims under CPLR 214-c. *See Dugan v. Schering Corp.*, 86 N.Y.2d 857 (1995) (rejecting the contention that metastatic cancer was a second injury that restarted the statute of limitations); *see also, J.D. v. United States*, 2011 U.S. Dist. LEXIS 8360 (S.D.N.Y. Jan. 28, 2011) (the accrual of a claim based on brain injury at birth is not tolled merely because the injury worsens and develops into cerebral palsy); *Sweeney v. Gen. Print. Inc., Div. of Sun Chem. Corp.*, 210 A.D.2d 865 (3d Dept. 1994) (progression of low grade tumor that became invasive and led to removal of his bladder in 1986 was not a separate injury).

---

[2] https://www.cancer.gov/publications/dictionaries/cancer-terms/def/metastasize.

The case of *Dugan v. Schering*, *supra*, is particularly instructive. There, the New York Court of Appeals determined that even if the plaintiff had believed she was free of cervical cancer following a hysterectomy in 1976, the discovery of metastatic cervical cancer 14 years later did not constitute a separate injury, and did not restart the statute of limitations. *Dugan*, 86 N.Y. 2d at 859. The Court thus concluded the claim was time-barred and affirmed dismissal on a motion to dismiss. *Id*. Here, it is irrelevant whether Plaintiff and decedent believed Plaintiff was free of breast cancer following a double-mastectomy in 2018, because the later discovery of metastatic breast cancer still would not constitute a separate injury, and does not restart the statute of limitations.

Plaintiff does not dispute that decedent's metastatic breast cancer is an outgrowth, worsening, or acceleration of her initial breast cancer. The National Cancer Institute defines "metastasize" as "[t]o spread from one part of the body to another. When cancer cells metastasize and form secondary tumors, the cells in the metastatic tumor are like those in the original (primary) tumor." *See* FN 2. Further, Mr. Palmeri clearly attests in his affidavit that the metastatic breast cancer in 2020 is an outgrowth, worsening, or acceleration of Decedent's initial breast cancer diagnosis that was ultimately confirmed to be the cause of death. ECF 9-2 at pars. 3, 12, 16.

Based on the foregoing, the primary condition on which Plaintiff's claim is based was indisputably known to Plaintiff no later than January 2018, giving Plaintiff until January 2021 to bring a claim under CPLR 214-c(2). Plaintiff failed to do so.

   b. *Plaintiff's CPLR 214-c(4) Analysis is Flawed*

Unlike CPLR 214-c(2), which focuses solely on the discovery of the injury, CPLR 214-c(4) focuses on the Plaintiff's discovery of the "cause" of the injury. In particular, CPLR 214-c(4) affords the Plaintiff, upon the meeting of certain conditions, one additional year to bring a claim measured from the discovery of the cause of the injury. To invoke § 214-c(4), the discovery of

6

the cause of the injury must occur less than five years from the date of discovery of the injury itself; and second, the Plaintiff must prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of the injury had not been discovered prior to the expiration of the limitations period. *See* CPLR 214-c(4). Plaintiff fails to meet his burden to avail himself of CPLR 214-c(4).

       i.    *CPLR 214-c(4) Does Not Apply Because Plaintiff Cannot Satisfy the Requisite Preconditions Needed to Invoke the Benefit of the One-Year Extension*

CPLR 214-c(4) offers a plaintiff in toxic tort cases an alternative limitations period, beyond the three-year period under CPLR 214-c(2), of one year measured from the date of discovery of the *cause of the injury*. (italics added). However, there are two prerequisites in the statute that Plaintiff must satisfy in order to invoke CPLR 214-c(4). First, the discovery of the alleged cause of injury must be discovered no later than five years after the discovery of the injury, and, second, the plaintiff must show that technical, scientific or medical knowledge or information sufficient to ascertain the cause of the injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized. *See* CPLR 214-c(4). CPLR 214-c(4) thus provides a "narrow" exception to the three-year statute of limitations (*Trisvan v. Heyman*, 305 F. Supp. 3d 381 (E.D.N.Y. 2018)) and the burden is on the Plaintiff to aver facts showing the exception embodied in 214-c(4) applies. *See Burger v. Union Carbide Corp.*, 304 A.D.2d 700 (2nd Dept. 2003).

The Court of Appeals has stated that "[t]echnical, scientific, or medical knowledge and information sufficient to ascertain the cause of the plaintiff's injury is discovered, identified, or determined within the meaning of the statute when the existence of the causal relationship is generally accepted within the relevant technical, scientific or medical community." *See Giordano v. Market Am., Inc.*, 15 N.Y.3d 590 (N.Y. 2010). In *Giordano*, the Court of Appeals reaffirmed its

7

prior holding that CPLR 214-c(4) refers to the time when information is sufficient for the technical, medical or scientific community "to ascertain" the cause of the injury at issue, not when a reasonable layperson, lawyer, or particular Plaintiff could ascertain the cause. *Id*. at 601. Only the technical knowledge of the scientific and medical communities is to be considered in determining whether the injured party's delay following the discovery of the injury should be excused. *Id*. at 601, *citing Wetherill v. Eli Lilly & Co. (In re N.Y. County DES Litig.)*, 89 N.Y.2d 506 (N.Y. 1997).

The relevant consideration for whether CPLR 214-c(4) applies is not the Palmeris' own alleged subjective lack of knowledge. Instead, it is whether the general medical or scientific community was able to ascertain a link between radiation exposure and cancer. Plaintiff never asserts that technical, scientific, or medical knowledge and information was insufficient to ascertain the cause of the decedent's injury, only that Plaintiff and Decedent themselves had not yet discovered it. ECF 9-2 at par. 21. The failure to satisfy the requisite precondition for invoking CPLR 214-c(4) prevents its application. Further, it cannot reasonably be disputed that the scientific community was aware of the link between radiation and cancer given that Plaintiff's own Complaint indicates the USEPA conducted a pre-removal site evaluation at the Palmeri Property in 2020 at which time they determined radioactive material, including dust particles from the contaminated soil at the site, posed an "unacceptable cancer risk". ECF 1-1 at par. 26.

Even aside from the "scientific community, the Palmeris themselves knew or should have known in January 2018, and certainly no later than January 2021 as a matter of law, that Ms. Palmeri's breast cancer could have been environmentally related. First, it cannot reasonably be disputed that the Palmeris made allegations as early as October 2017 that there was environmental contamination at their home and alleged that it posed a risk to human health and the environment. *See generally* ECF 3-2. They further alleged that those residing in the home were exposed to doses

8

of radiation that increased their risk for adverse health effects to such an extent that this exposure warranted medical monitoring. ECF 3-2 at par. 46. Decedent was diagnosed with breast cancer only a few months later. Moreover, Plaintiff admits in the Complaint, that "in 2020" the "USEPA performed a pre-removal site evaluation at the Palmeri Property and determined that there was *an unacceptable cancer risk related to the radiation*, including exposure to gamma radiation in the home and in exterior areas at the site; radon inhalation inside the home; as well as risks related to radioactive dust particles from the contaminated soil at the site." ECF 1-1 at par. 26 (emphasis added). The Complaint further admits that a radon migration system was installed in the Palmeri's home by January 2021 in response to this finding. ECF 1-1 at par. 28. In other words, Plaintiff has repeatedly admitted in the Complaint that the risks from the hazardous substance exposure, including the risk of cancer, were known for more than the one year period prior to Decedent's death. Therefore, even under the incorrect view that it was Plaintiff's subjective knowledge, rather than the knowledge of the medical and scientific community at large, the Complaint itself establishes that the alleged cause was discovered no later than January 2021, giving Plaintiff one additional year to file suit – or until January 2022.

      *ii.      Any Suggestion That Discovery of the "Cause" Under CPLR 214-c(4) Refers to the Discovery of a Specific Defendant(s) Alleged Liability is Misplaced*

Plaintiff alternatively suggests that the "cause" of Ms. Palmeri's breast cancer was not discovered until September 2023 following the USEPA's fingerprinting analysis that allegedly showed radioactive material at the property was generated by NL. ECF 9 at p. 6-7. Implicitly Plaintiff asks this Court to accept that discovery of the "cause" of injury under CPLR 214-c(4) refers to discovery of the particular defendant allegedly responsible for the contamination at issue.

Plaintiff cites no authority to support his position that the "cause" under CPLR 214-c(4) refers to a particular defendant Plaintiff alleges is responsible for the toxic substance, and inclusion

9

of language in the statute referring to "technical, scientific or medical knowledge" does not support this reading. To the contrary, the New York Court of Appeals and other New York courts have confirmed that "for all intents and purposes, discovery that a plaintiffs symptoms were attributable to an injury inflicted by an outside force is the same as 'discovery of the cause of the injury' within the meaning of CPLR 214-c(4). *See In re N.Y. County DES Litig.,* 89 N.Y.2d at 513; *see also, Garner v. NGC Bodily Injury Trust*, 2012 U.S. Dist. LEXIS 115878 (W.D.N.Y. 2012); *Baldi v. Rocky Point Union Free Sch. Dist.*, 2022 N.Y. Misc. LEXIS 1358 (Sup.Ct. N.Y. Cnty. 2022).

Moreover, environmental contamination cases interpreting CPLR 214-c(4) have held that a plaintiff discovers the "cause" of injury when a medical or scientific connection is made between exposure to substances within a given environment ***and the plaintiff's illness***, and not the more limited meaning that discovery of the cause occurs when Plaintiff identifies the specific chemicals responsible for the contamination. *See Glod v. Ashland Chem. Co., Div. of Ashland Oil*, 145 Misc. 2d 200, at 206-07 (Sup.Ct. Oswego Cnty. Aug. 22, 1989) (rejecting contention that plaintiff did not discover the cause of his injury until learning the identities of the specific chemicals involved); *see also* Alexander, McKinney Practice Commentary, N.Y. C.P.L.R. 214-c (2019) ("To take advantage of the one-year extension, therefore, the plaintiff must show that it was not generally accepted in the scientific community that toxic substance x (to which she was exposed) can cause injury (plaintiff's condition), at the time of, and for three years following, the discovery of her condition."). But here, of course, Plaintiff admits that he has known about the radiological material on the property since no later than 2017, when he filed a lawsuit against different companies seeking medical monitoring and other relief. Indeed, from 2017 until August 7, 2024 (the day before Plaintiff filed the Opposition), Plaintiff alleged in the Talarico case that Occidental

Chemical Corporation, Union Carbide, and Bayer Cropscience, Inc. were the parties responsible for the radiological contamination at the property.

There is no support for Plaintiff's contention that discovery of the "cause" under CPLR 214-c(4) refers to the identity of the specific defendant Plaintiff currently alleges to be responsible for the contamination at issue. To the contrary, the law is clear that knowledge of the "cause" for purposes of CPLR 214-c(4) refers to knowledge that the injury at issue was related to an outside force or substances within a given environment (i.e. exposure to environmental contamination).

### c. *Plaintiff's Property Damage Claims are Subject to Dismissal Regardless of Whether CPLR 214-c(2) or CPLR 214-c(4) is Applied*

Plaintiff's Opposition fails to address the property damage claims and does not dispute that the Palmeris were aware as early as October 2017 that environmental contamination was present at the Palmeri Property. *See generally* ECF 9. There is thus no dispute that under CPLR 214-c(2), Plaintiff was aware of the property damage injury by October 2017 and had three years, or until October 2020, to bring a claim for property damage. For the reasons discussed above, 214-c(2) and (4) do not save Plaintiff's property damage claims.

## II. PLAINTIFF'S FAILURE TO STATE A CAUSE OF ACTION

Plaintiff continues to rely on the vague and conclusory assertion that NL "participated in and sanctioned the indiscriminate dispersal and disposal of its radioactive wastes throughout Niagara County, including at the Palmeri Property" in an effort to suggest a claim for strict liability against NL has been adequately pled under *Iqbal/Twombly*. ECF 9 at pp. 12-14. NL continues to maintain, as set forth in its initial motion papers, that this single, vague allegation, devoid of any context or factual support, fails to put NL on notice of how it allegedly "participated in" or "sanctioned" the dispersal of any waste material at the Palmeri Property.

As to the negligence claim, both the existence and nature of a duty is a question of law. *Pasternack v. Lab of Am. Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016). Here, Plaintiff submits that he has plausibly alleged that NL owed a duty of care to Plaintiff, without offering any facts to plausibly support this allegation. The Complaint alleges that waste generated by NL was disposed of at the property nearly four decades before the Palmeris acquired an interest in the property, but it fails to establish any connection between NL and the Palmeris from which one could infer a duty may exist. ECF 1-1; *Wild v. Hayes*, 68 A.D.3d 1412 (3d Dept. 2009) (dismissing negligence claim and finding plaintiff lacked standing to bring claim where he did not own or have possessory rights when the claim accrued); *see also Andres v. Town of Wheatfield, et al.,* 2020 U.S. Dist. LEXIS 261654, at *19-20 (W.D.N.Y. March 13, 2020) (failure to allege on which legal theory the defendants owed a duty to plaintiffs warranted dismissal of Complaint), citing *Reed v. Corning Inc.*, 351 F. Supp. 3d 342, 356 (W.D.N.Y. 2018). Plaintiff's conclusory assertion that "Mr. Palmeri alleges both that Defendant owed a duty to Plaintiff and that Defendant breached that duty" (ECF 9 at p. 16) is a legal conclusion that is not entitled to the presumption of truth under *Iqbal/Twombly*.

In an effort to save the private nuisance claim, Plaintiff alleges that NL generated and disposed of waste at the property on which the Palmeris would later come to live. ECF 9 at p. 17. This contention misses the mark, and fails to state a claim for the reasons set forth in NL's initial motion papers. Plaintiff cites no authority for the proposition that a condition which existed on the property prior to acquisition of the property may be considered a nuisance to later owners or residents. Plaintiff argues that the *Abbatiello* case saves his nuisance claim (*See* ECF 9 at pp. 16-17), it does not. In *Abbatiello*, it was alleged that one of the defendants "for many years released, and continues to release" contaminants on the plaintiffs' properties. *Id.* Here, Mr. Palmeri admits he purchased his property decades after the waste, allegedly generated by NL, was disposed of at

the property. Nowhere does Plaintiff allege that NL, or any other entity, deposited waste after the Palmeris acquired their home.

As for the trespass cause of action, Plaintiff fails to address any case law cited by NL for the proposition that an injured party must have been in possession of the real property at the time the wrongful entry upon the property occurred. *See Wild v. Hayes*, 68 A.D.3d 1412 (3d Dept. 2009); *W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 195 (2d Cir. 1987); *Stark v. Howe Sound Co.*, 148 Misc. 686 (Sup.Ct. Chemung Cnty. 1933). Likewise, there is no basis to infer an unauthorized invasion onto the Palmeri Property, given the repeated contentions by plaintiff that the alleged contaminants were disposed of decades before the Palmeris moved to the property. Plaintiff's reliance on the allegation in the Complaint that disposal of the waste resulted in an "unauthorized invasion" (ECF 9 at p. 18) is nothing more than a legal conclusion that need not be accepted as true under *Iqbal/Twombly*.

## CONCLUSION

For the foregoing reasons, Defendant NL Industries Inc. requests that this Court grant its motion to dismiss, with prejudice.

**DATED:**   August 21, 2024     **BARCLAY DAMON LLP**

By: _____
Andrew J. Carroll

*Attorneys for Defendants*
*NL Industries, Inc.*
The Avant Building, Suite 1200
200 Delaware Avenue
Buffalo, New York  14202-2150
Telephone:  (716) 856-5500
Email: acarroll@barclaydamon.com