UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILIP S. PALMERI, Individually
and as Administrator of the Estate of
TRACEY L. PALMERI, Deceased,

                              Plaintiff,       Civil Action No.
                                                      1:24-cv-00556

vs.

NL INDUSTRIES, INC.

                              Defendant.
_____

### DEFENDANT NL INDUSTRIES, INC.'S SUPPLEMENTAL SUBMISSION
### IN FURTHER SUPPORT OF MOTION TO DISMISS

                                                     **BARCLAY DAMON LLP**
                                                       *Attorneys for Defendant*
                                                       *NL Industries, Inc.*
                                                       The Avant Building, Suite 1200
                                                       200 Delaware Avenue
                                                       Buffalo, New York  14202-2150
                                                       Telephone:  (716) 856-5500
                                                       Email: acarroll@barclaydamon.com

**ANDREW J. CARROLL,**
*Of Counsel*

Decedent's diagnosis of breast cancer in January 2018 commences the clock on the statute of limitations under CPLR 214-c(2). The subsequent finding of that same breast cancer metastasizing[1] does not constitute a separate and distinct injury that restarts the statute of limitations anew. *See* Dkt. 12 pp. 3-6. Thus, under CPLR 214-c(2), plaintiff's claims expired in January 2021.

Further, as has been extensively argued and briefed, CPLR 214-c(4) does not extend the statute of limitations for plaintiff's otherwise time-barred claims against NL. Initially, Plaintiff cannot show technical, scientific, or medical knowledge sufficient to ascertain the cause of Ms. Palmeri's cancer did not exist prior to January 2021. Furthermore, the one-year extension provided by the statute does not save Plaintiff's claims because Plaintiff knew or reasonably should have discovered "the cause" of her injury by October 2019[2], and certainly no later than November 2020.

## ARGUMENT

**1. "Discovery of the Cause" Under CPLR 214-c(4) Refers to Discovery That One Was Exposed to a Substance, Not Discovery of the Corporate Entity Legally Responsible for the Substance**

This Court heard extensive argument from plaintiff's counsel at oral argument, unsupported by any case law, that the Legislature intended the "discovery of the cause" under

---

[1] A metastasis is by definition a spread of the original cancer cells. *See* https://www.cancer.gov/publications/dictionaries/cancer-terms/def/metastasize. As set forth extensively in NL's Reply Brief, multiple courts have held that aggravation, acceleration, or metastasis of a disease, including cancer, does not represent a separate and distinct injury as a matter of law. *See Dugan v. Schering Corp.*, 86 N.Y.2d 857 (1995); *J.D. v. United States*, 2011 U.S. Dist. LEXIS 8360 (S.D.N.Y. Jan. 28, 2011); *Sweeney v. Gen. Print. Inc., Div. of Sun Chem. Corp.*, 210 A.D.2d 865 (3d Dept. 1994). There is no dispute in this case that Ms. Palmeri passed away from a metastasis of her original breast cancer. *See* Dkt. 9-2, at par. 16.

[2] As mentioned by plaintiff's counsel at oral argument, and as set forth in the accompanying timeline, the Palmeris hired an environmental consultant to conduct a gamma survey at the Palmeri Property in October 2019 at which time they learned there was radiation in an amount of 30 times greater than the area's background gamma concentration. This prompted them to notify the New York State Department of Health, who in turn referred the Site to the U.S. Environmental Protection Agency ("USEPA"). The USEPA then conducted a site inspection in November 2020 that found an unacceptable risk of cancer from the radioactive material that was present. *See* Dkt. 9-5.

CPLR 214-c(4) to mean discovery of the "causer". Not only is plaintiff's position unsupported, it runs contrary to New York case law which interprets "discovery of the cause" under CPLR 214-c(4) to mean a discovery that one was exposed to a substance, *i.e.* the toxic etiology of the injury, without regard to who is legally responsible for the substance. In particular, the New York Court of Appeals has held "discovery that a plaintiff's symptoms were attributable to an injury <u>*inflicted by an outside force*</u> is the same as 'discovery of the cause of the injury' within the meaning of CPLR 214-c(4). *See Wetherill v. Eli Lilly & Co. (In re N.Y. County DES Litig.),* 89 N.Y.2d 506, 513 (N.Y. 1997); *see also*, *Giordano v. Market Am. Inc.*, 15 N.Y.3d 590 (N.Y. 2010) (noting the focus of 214-c(4) is on the existence of information "to link plaintiff's injury with <u>*the substance at issue*</u>"; *Cunningham v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 2010 U.S. Dist. LEXIS 49676 (E.D.N.Y. 2010) (noting the focus for 214-c(4) is on knowledge of a causal relationship between <u>the substance at issue</u> and the symptoms alleged…"); *Pompa v. Burroughs Wellcome Co.*, 259 A.D.2d 18 (3d Dept. 1999) (noting the focus of 214-c(4) is on the existence of a connection "between <u>the substance at issue</u> and the symptoms alleged…") (emphasis added).

The New York Court of Appeals case of *In re N.Y. County DES Litig.* is instructive. In March 1988, after experiencing reproductive issues throughout the 1980s, the plaintiff learned that her mother may have ingested a harmful drug (DES) during her own pregnancies. *Id*. at 509. She later learned that the drug caused reproductive health issues to user's offspring. *Id*. In 1992, she commenced suit against several different companies who manufactured DES. *Id*. at 510. In discussing the interplay between CPLR 214-c(2) and 214-c(4), the Court concluded "discovery of the cause" is the same as "discovery that a plaintiff's symptoms were attributable to an injury inflicted by an outside force". *Id*. at 513. At no point does the Court suggest that discovery of the cause requires a plaintiff to know which company manufactured the causative agent. Rather, the focus is on knowledge that a plaintiff's injury was caused by an outside force.

2

29811849

Indeed, Plaintiff's argument in this case was rejected by the Court in *Barrera v. Stewart*, 2013 N.Y. Misc. LEXIS 462 (Sup. Ct. N.Y. Cnty. Jan. 25, 2013). In *Barrera*, the court correctly noted that discovery of the "cause" under CPLR 214-c(4) did **not** refer to when the plaintiff discovered who manufactured the causative agent:

> "…plaintiffs' claim is still time-barred as counsel has failed to satisfy the other conditions in subdivision 4 of CPLR §214-c. First, as defendant Medtronic correctly argues, plaintiffs discovered the "cause" of the injury in May 2008 when Methodist Hospital found via an X-ray that plaintiff's chest pains were caused by the presence of a metallic object in her chest cavity. **No merit exists to plaintiffs' claim that it did not know the "cause" of the injury until it learned that Medtronic was the manufacturer of the pericardial sump from which the metallic object had broken**. As discussed above, the Court of Appeals in *Wetherill* rejected the notion that the statute does not begin to run until the plaintiff identifies the precise etiological source of the injury; it is enough to discover that the 'plaintiff's symptoms were attributable to an injury inflicted by an outside force.'"

*Id.* at *20 (emphasis added), citing *In re N.Y. County DES Litig*, 89 NY2d at 512-13 and Alexander, Vincent C, *Practice Commentary* C214-c:2, McKinney's Cons. L., p 407.

Numerous cases have held that "discovery of the cause" of one's injury refers to a discovery that one was exposed to a given substance – which in this case, is the radioactive waste at the Palmeri Property. As set forth in NL's motion papers, there can be no dispute that the Palmeris knew no later than November 2020, that cancerous-causing radioactive waste was present at the Palmeri Property because by that time the Palmeris (i) were a party to a prior lawsuit related to radioactive waste at their property; (ii) were aware that Ms. Palmeri had been diagnosed with breast cancer; (iii) had hired an environmental consultant to conduct a study at their property which showed radiation in an amount of 30 times greater than the area's background gamma concentration; and (iv) were aware that the EPA performed an evaluation of the property and determined the radioactive waste posed an unacceptable risk of cancer. Plaintiff therefore had knowledge of a link between the breast cancer and exposure to radioactive material capable of

causing cancer[3] by November 2020 at the very latest. Even if the one-year extension under CPLR 214-c(4) applied, which it does not, Plaintiff had until November 2021 to bring a claim.

2. **The Palmeris' Own Subjective Understanding of the Cause of Ms. Palmeri's Breast Cancer Is Irrelevant Under CPLR 214-c(4)**

The Palmeris' own subjective understanding of when they discovered Ms. Palmeri's breast cancer could be caused by the radioactive material at their property is irrelevant to a CPLR 214-c(4) analysis. *See Giordano*, 15 N.Y.3d at 601; *see also In re N.Y. County DES Litig,* 89 N.Y.2d at 514-515; Alexander, McKinney Practice Commentary, N.Y. CPLR 214-c (2019):

> "The basic point, however, is that it is not enough that the plaintiff or her physician was personally unaware of the toxic etiology of her medical condition; the scientific community's lack of knowledge is what matters. To take advantage of the one-year extension, therefore, the plaintiff must show that it was not generally accepted in the scientific community that toxic substance x (to which she was exposed) can cause injury y (plaintiff's condition), at the time of, and for three years following the discovery of her condition."

Given that the breast cancer was discovered in January 2018, Plaintiff must show in this case that a link between cancer and exposure to radioactive material was not scientifically knowable prior to January 2021. Not only has Plaintiff failed to make this showing, the Complaint expressly acknowledges that such a link was scientifically knowable prior to January 2021. *See* Dkt. 3-4, at par. 26 ("During 2020, USEPA performed a pre-removal site evaluation at the Palmeri Property and determined there was an unacceptable risk of cancer related to the radiation…).

Based on the foregoing, Plaintiff's purported reliance on the Palmeris' claimed lack of knowledge or understanding that the radioactive material at their property could be the cause of her breast cancer until September 2021 is a red herring that must be disregarded. Because there is no dispute that information from the EPA in 2020 determined that the radiation in question presented an unacceptable cancer risk, Plaintiff cannot show that CPLR 214-c(4) applies.

---

[3] While not relevant to the instant motion, NL disputes that it is responsible for the alleged radioactive material.

4

3. **The Statute of Limitations Must Be Applied As Intended**

NL respectfully submits that CPLR 214-c(4) must be applied as intended by the Legislature without regard to the effect it may produce under the facts of this case.

New York courts have held that a court's duty to apply the statute of limitations as written outweighs any perceived unfairness or harsh result for a particular plaintiff. *See Broughton v. Chrysler Corp.*, 144 F.R.D. 23, 29 (W.D.N.Y. 1992). As the Supreme Court explained, statutes of limitations represent a persistent legislative judgment that a defendant's right to be free of time barred claims prevails over a plaintiff's right to bring them. *Cal. Pub. Emples. Ret. Sys. v. Ebbers (In re Worldcom, Inc. Sec. Litig.)*, 308 F. Supp. 2d 214, 235 (S.D.N.Y. 2004).

The statute of limitations cannot be disregarded even if its application may appear to produce a harsh result. *Petroholding Dominicana, Ltd. v. Gordon*, 2019 U.S. Dist. LEXIS 92421, at *24-25 (S.D.N.Y. June 3, 2019) (quoting *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 887 (2d Cir. 1988) ("[The] Court is aware that the application of the []statute of limitations leads to a harsh result for Plaintiff . . . However, this Court cannot shirk its duty to apply the law as written."); *see also*, *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984); *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir. 1999). It follows that a court may not entertain a suit where the plaintiff failed to comply with the statute of limitations, even if the court's adherence to the statute denies the plaintiff of any remedy for an actionable injury. *BellSouth Telecomms. v. W.R. Grace & Co.*, 77 F.3d 603, 616 (2d Cir. 1996).

NL respectfully submits that it is this Court's duty to apply the statute of limitations in this case as the Legislature intended, without regard to any perceived harshness of the result.

**DATED:**   September 30, 2024                **BARCLAY DAMON LLP**

By: _____
Andrew J. Carroll

5

29811849