UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

PHILIP S. PALMERI, Individually
and as Administrator of the Estate of
TRACEY L. PALMERI, Deceased,

1:24-CV-00556 JLS (MJR)

REPORT AND
RECOMMENDATION

Plaintiff,

v.

NL INDUSTRIES, INC.,

Defendant.

———————————————————

     This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 4) Before the Court is defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 3). For the following reasons, it is recommended that defendant's motion to dismiss be granted.

## COMPLAINT AND OTHER RELEVANT INFORMATION[1]

     Plaintiff Philip Palmeri ("Palmeri" or "plaintiff") and his late wife, Tracey Palmeri ("Tracey"), resided at 789 Upper Mountain Road, Lewiston, New York (the "Palmeri property") from September 2011 through September 2021. (Dkt. No. 1-1, ¶¶ 1-2, ¶ 14) The home on the Palmeri Property, where plaintiff and Tracey resided, was constructed in 1957. (*Id.* at ¶ 9)

———————————————

[1] For purposes of evaluating the motion to dismiss, the Court treats all allegations in the complaint as true.

Defendant NL Industries, Inc. ("NLI") is the corporate successor to Titanium Alloy Manufacturing Company ("TAMCO") (collectively referred to as "defendant"). (Dkt. No. 1-1, ¶ 5) From around 1906 through around 1979, defendant operated a manufacturing plant, located at 4511 Hyde Park Boulevard in Niagara Falls, New York, that produced a variety of titanium-based and zirconium-based products. (*Id.* at ¶ 6, ¶ 16) Defendant's operations involved the processing of ores, heavy beach sands, and other raw materials, including ilmenite, zircon, and rutile. (*Id.*) The raw materials processed by defendant contained radioactive elements, such as thorium and uranium, in their decay chain. (*Id.* at ¶ 7, ¶ 8, ¶ 17) As a result, defendant generated radioactive waste that posed a danger to human health and the environment. (*Id.*)

Despite knowing the inherent risks, defendant participated in and/or sanctioned the disposal of its radioactive waste throughout Niagara County, including at the Palmeri property. (Dkt. No. 1-1, ¶ 9, ¶¶ 18-20) Specifically, radioactive waste generated and disposed of by defendant was used as fill material on the Palmeri property, prior to the construction of the Palmeri's residence. (*Id.*) Defendant's radioactive waste was also disposed of at the property adjacent to the Palmeri property, located at 783 Upper Mountain Road, Lewiston, New York (the "783 UMR property"). (*Id.* at ¶ 20)

Defendant's radioactive waste emitted dangerous levels of radiation at the Palmeri property, both inside and outside of the residence, resulting in significant adverse health consequences and significantly decreased property value. (Dkt. No. 1-1, ¶¶ 10-11, ¶ 15) As a result of her exposure to the radiation generated from defendant's waste materials, Tracey developed breast cancer and ultimately passed away from the disease. (*Id.* at ¶ 21, ¶¶ 37-38, ¶¶ 40-44)

Plaintiff filed the instant lawsuit on April 25, 2024, seeking damages for Tracey's wrongful death, personal injuries, and pain and suffering as well as damages for his own loss of consortium, decreased property value, and impairment of beneficial use and enjoyment of the Palmeri property. (Dkt. No. 1-1, ¶¶ 46-47) Plaintiff's complaint asserts claims of (1) strict liability based on ultrahazardous/abnormally dangerous activity; (2) negligence; (3) private nuisance; and (4) trespass.[2] (*Id*. at ¶¶ 48-72)

Defendant contends that plaintiff's lawsuit is untimely and must be dismissed based on the applicable statute of limitations. A discussion of the complaint allegations and other information relevant to defendant's timeliness argument is provided below.[3]

### The October 2017 Lawsuit

In October of 2017, over six years before the instant lawsuit was commenced, Palmeri and a group of other plaintiffs filed a lawsuit against a number of companies in the Western District of New York, seeking recovery for damages incurred as a result of the disposal of radioactive waste, by those companies, at various locations in Niagara County, including at the Palmeri property (the "October 2017 lawsuit"). *See Talarico Bros. Building Corp., et al. v. Union Carbide Corporation, et al.*, Case No. 1:17-CV-01041. NLI,

---

[2] All four causes of action arise under New York state law. (Dkt. No. 1-1) Plaintiff commenced this lawsuit in the Supreme Court of the State of New York, County of Niagara. (*Id*.) Defendant removed the lawsuit to the Western District of New York on June 12, 2024, based on diversity jurisdiction. (Dkt. No. 1) Defendant indicates, and the complaint reflects, that (1) plaintiff is a citizen of New York; (2) defendant is a business corporation, organized under the laws of the state of New Jersey, with a principal place of business in Dallas, Texas; and (3) the amount in controversy is greater than $75,000. (*Id*.)

[3] In ruling on Rule 12(b)(6) motion, the Court may consider documents and matters integral to plaintiff's claims where plaintiff had notice of that information. *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000). The Court may also take judicial notice of matters of public record, such as decisions and pleadings in prior lawsuits. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000). In addition, in response to defendant's motion to dismiss, plaintiff Philip Palmeri submitted an affidavit with exhibits, which included Tracey Palmeri's relevant medical records. (Dkt. Nos. 9-2, 9-3) During oral argument addressing the motion to dismiss, defendant indicated that it did not object to the Court's consideration of Palmeri's affidavit. Thus, in making the instant recommendation, this Court has also considered the information set forth in Palmeri's affidavit and its accompanying exhibits. (*Id*.)

the defendant in this case, was not named as a defendant in the October 2017 lawsuit. (*Id.*) In the October 2017 lawsuit, Palmeri and the other plaintiffs alleged that radioactive waste disposed of at the Palmeri property and other locations caused harm to human health and the environment. (Dkt. No. 3-2, ¶¶ 1-5, ¶ 14, ¶¶ 37-38, ¶¶ 45-46, ¶ 51) The October 2017 lawsuit further alleged that those residing at the Palmeri property, as well as those residing at other properties noted in that complaint, were being exposed to elevated doses of radiation that increased their risk for adverse health consequences. (*Id.* at ¶ 46) Palmeri and the other plaintiffs in the October 2017 lawsuit sought recovery for property damage caused by disposal of the waste, and also sought medical monitoring as a result of the alleged harmful exposure to radiation.[4] (*Id.* at ¶ 5, ¶ 46, ¶ 92)

### Tracey's Cancer Diagnosis and Illness

On January 23, 2018, over a year after Palmeri's filing of the October 2017 lawsuit, Tracey was diagnosed with Stage 1 breast carcinoma on the right side.[5] (Dkt. No. 9-2, ¶ 3) She underwent a bilateral total mastectomy on February 19, 2018. (*Id.*) Approximately two months later, Tracey returned to work. (*Id.*) According to plaintiff, plaintiff and Tracey believed, at that time, that Tracey's breast cancer was treatable, that it had been removed, and that she could continue to lead a happy and healthy life. (*Id.* at ¶ 3, ¶ 10) For the next two and a half years following her diagnosis, Tracey underwent general care and follow-

---

[4] During oral argument of the motion to dismiss the instant complaint, it was noted that the October 2017 lawsuit remains ongoing, but that Palmeri is no longer a party to that lawsuit. Plaintiff's affidavit suggests that he withdrew from the lawsuit after learning that NLI, who was not named as a defendant in the October 2017 lawsuit, was the party responsible for the radioactive waste found at the Palmeri property. (Dkt. No. 9-2, ¶ 20)

[5] The complaint alleges that Tracey was diagnosed with breast cancer in 2017. (Dkt. No. 1-1, ¶ 41) However, Palmeri's affidavit, and the accompanying medical records, indicate that Tracey's initial breast cancer diagnosis occurred on January 23, 2018. (Dkt. No. 9-2) Defendant does not contest this fact. (Dkt. No. 15-1) Thus, the Court treats January 23, 2018 as the operative date of Tracey's initial breast cancer diagnosis.

up appointments to monitor the breast cancer. (*Id.*) There were no significant test results or changes in her treatment during that time. (*Id.*) According to plaintiff, when Tracey was first diagnosed with Stage 1 breast cancer in January of 2018, they had no reason to associate her cancer with exposure to a toxic substance. (*Id.* at ¶ 17)

In October of 2019, the Palmeri's hired an environmental consultant to conduct a gamma survey at the Palmeri property, which identified measurements of radiation 30 times greater than the area's general background gamma concentration. (Dkt. No. 1-1, Exh. D) The Palmeri's notified the New York State Department of Health (the "NYSDOH") of the radiation concerns. (*Id.*)

Tracey underwent a breast MRI on August 21, 2020. (Dkt. No. 9-2, ¶ 3, ¶ 11) The MRI showed some areas of concern, and Tracey was sent for further testing. (*Id.*) Shortly thereafter, plaintiff and Tracey "learned that the cancer had returned and was beginning to spread." (*Id.* at ¶ 11) On September 25, 2020, Tracey underwent a PET/CT scan which showed preliminary signs of metastatic breast cancer. (*Id.* at ¶ 3) On October 8, 2020, Tracey had a biopsy of her liver as well as an abdominal ultrasound, which revealed metastatic carcinoma. (*Id.*) On October 22, 2020, Tracey received "a new diagnosis of breast cancer to the liver, bone, and lymph nodes." (*Id.*)

### *EPA Involvement and Removal Activities at the Palmeri Property*

In October of 2020, around the time that Tracey received the metastatic carcinoma diagnosis, the NYSDOH referred the Palmeri property to the United States Environmental Protection Agency (the "EPA") for further investigation. (Dkt. No. 1-1, Exh. D) In November of 2020, the EPA performed a removal site evaluation at the Palmeri property and determined there was an unacceptable cancer risk to its residents. (Dkt. No. 1-1, ¶¶

26-27; Exh. D) This risk was based on elevated radiation levels found inside and outside the home, as well as the discovery of radioactive dust particles from contaminated soil. (*Id.*) The radiation levels found at the Palmeri property, by the EPA, were 50 to 100 times higher than the EPA's soil clean-up standard, which is based on a cancer risk of 1 in 10,000. (*Id.*) In January of 2021, following its determination that the radioactive waste at the Palmeri property posed an unacceptable cancer risk, the EPA funded the installation of a mitigation system in the Palmeri's home. (*Id.* at ¶ 28) Later in 2021, the EPA commenced excavation activities to remove and dispose of radioactive waste at the Palmeri property and at the 783 UMR property. (*Id.*) The Palmeri's were displaced from their residence in September 2021, when the EPA commenced its removal activities, and never returned. (*Id.* at ¶ 34)

Also in or around September 2021, after the Palmeri's had been displaced from their home, plaintiff and Tracey began discussing the EPA removal activities and the radiation found at their property with Tracey's treating physicians. (Dkt. No. 9-2, ¶ 14) Tracey's physicians then suggested to the Palmieri's, for the first time, that her metastatic carcinoma, specifically the breast cancer that had spread to her liver, bone, and lymph nodes, could be environmentally related and caused by the radioactive waste discovered on their property. (*Id.*) According to plaintiff, this was the first time that the Palmeri's discovered or had knowledge that the radioactive waste on their property could have been the cause of Tracey's cancer. (*Id.*)

Throughout 2021 and into early 2022, Tracey underwent chemotherapy and cancer drug treatment. (Dkt. No. 9-2, ¶ 3) Tracey died as a result of metastatic

adenocarcinoma of the breast and locoregional breast cancer on April 25, 2022, at the age of 44. (Dkt. No. 1-1, ¶ 45; Dkt. No. 9-2, ¶ 2, ¶ 16)

The EPA completed its removal activities at the Palmeri property in the summer of 2022. (Dkt. No. 1-1, ¶ 35) Approximately 4,800 tons of radioactive waste was excavated from the Palmeri property as well as the 783 UMR property, and transported to a licensed landfill. (*Id*. at ¶ 33) Plaintiff sold the Palmeri property in June of 2023. (*Id*. at ¶ 36)

### Defendant's Alleged Connection to the Radioactive Waste

In April of 2023, the EPA conducted a mineralogical fingerprinting analysis of the Palmeri property. (Dkt. No. 1-1, ¶¶ 22-24; Exhs. B, C) The analysis showed that sandy fill material used at the Palmeri property was comprised primarily of zircon, rutile, and ilmenite, all of which were consistent with defendant's use of heavy beach sands and other raw materials in its production of titanium-based and zirconium-based products. (*Id*.) Further, the EPA found barium titanate powder at the Palmeri property. (*Id*. at ¶ 25) Defendant was the only producer of barium titanate powder in the United States from 1940 until approximately the mid-1960's. (*Id*.) In or around August of 2023, the EPA discovered small steel plates mixed in with radioactive waste in a crawl space under the residence at the 783 UMR property. (*Id*. at ¶ 31; Exh. E) The plates referred to "Titanium Alloy Manufacturing Co., Niagara Falls, N.Y.", namely TAMCO, and also referred to certain historical products produced by defendant at its Niagara Falls plant. (*Id*.)

In September of 2023, plaintiff learned, for the first time, that the EPA performed mineralogical fingerprinting analysis on materials removed from the Palmeri property, and that those results indicated that radioactive waste found at the property had been produced by defendant. (Dkt. No. 9-2, ¶ 19) Prior to that time, plaintiff had no knowledge

7

of the producer of the radioactive waste deposited at the Palmeri property. (*Id.*) On December 5, 2023, the EPA sent a letter notifying defendant that it was considered a potentially responsible party with respect to the radioactive contamination found at the Palmeri property and the 783 UMR property. (Dkt. No. 1-1, ¶ 29; Exh. D)

## APPLICABLE LEGAL STANDARD

In order to state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, (2009); *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a motion to dismiss, a court must accept as true the factual allegations contained in a complaint and draw all inferences in plaintiff's favor. *See Allaire Corp. v. Okumus* 433 F.3d 248, 249-50 (2d Cir. 2006). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 662. "Determining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

Plaintiff seeks compensation for property damage, personal injuries suffered by Tracey as a result of her breast cancer, and Tracey's wrongful death, all allegedly caused by defendant's disposal of radioactive waste at the Palmeri property. New York state law claims for property damage and personal injuries are subject to a three-year statute of

8

limitations. *See* New York Civil Practice Law and Rules ("CPLR") § 214. A wrongful death claim is generally subject to a two-year statute of limitations, measured from the date of death. *See* New York Estates, Powers and Trusts Law ("EPTL") § 5-4.1. However, the New York State Court of Appeals has clarified that a wrongful death action may not be maintained where the underlying claims are barred by the statute of limitations or were not otherwise viable at the time of death. *See Bevinetto v. Steven Plotnick, M.D., P.C.,* 51 A.D. 3d 612 (2d Dep't 2008) (although the action was commenced with the two-year limitations period provided for a wrongful death cause of action, the statute of limitations on the underlying medical malpractice action had run during the decedent's lifetime, and therefore the wrongful death claim was also time-barred).

Defendant asserts that plaintiff's personal injury and property damage claims are untimely under CPLR § 214, and that the wrongful death claim cannot survive because it was time-barred, and therefore not viable, at the time of Tracey's death. For the reasons enumerated below, the Court agrees.

### CPLR § 214-c(2)

For claims, such as these, based on the "latent effects of exposure" to any substance or combination of substances, the three-year statute of limitations period begins to run on the earlier of either (1) "the date of discovery of the injury by the plaintiff" or (2) "the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff." *See* CPLR § 214-c(2). Here, plaintiff and Tracey discovered the injury on January 23, 2018, when Tracey was diagnosed with breast cancer.

9

In opposing the motion to dismiss, plaintiff initially argued that Tracey's injury was not discovered until September of 2021, when the Palmeri's were first advised, by Tracey's treating physicians, that her cancer was likely caused by environmental toxins. (Dkt. 9, pgs. 8-9) However, "[t]he three-year statute of limitations of CPLR 214-c(2) runs from the time a plaintiff discovers an injury, that is, from the time she realizes that she has the physical manifestations of illness, regardless of when she learns of the cause." *Martin v. 159 W. 80 St. Corp.*, 3 A.D.3d 439 (1st Dep't 2004). *See also In re N.Y. County DES Litig.*, 89 N.Y.2d 506 (1997) (CPLR § 214-c(2)'s phrase "discovery of injury" refers to "discovery of the physical condition and not, as plaintiff argues, the more complex concept of discovery of both the condition and the nonorganic etiology of that condition."); *Crossman v. Harding Indus. Tool & Master Chemical Corp.*, 222 A.D.2d 1081 (4th Dep't 1995) (statute of limitations runs from the discovery of the injury as opposed to discovery that the injury was caused by a particular chemical); *Sweeney v. General Painting*, 210 A.D.2d 865 (3d Dep't 1994) ("[A] plaintiff must be considered to have discovered...an injury when he or she is actually diagnosed as suffering from a particular disease, even though unaware of its cause."). Thus, the Court rejects plaintiff's contention that the Palmeri's did not discover Tracey's injury until they learned it was caused by radioactive waste disposed of at their property.

Plaintiff next argues, apparently in the alternative, that Tracey's injury was not discovered until October 22, 2020, when Tracey was diagnosed with metastatic breast cancer and "breast cancer to the liver, bone, and lymph nodes." (Dkt. No. 9, pgs. 10-11) Tracey was diagnosed with Stage 1 breast cancer on January 23, 2018. After undergoing a bilateral mastectomy, Tracey returned to work and other normal life activities for the

next two and half years. Plaintiff emphasizes that, during this time period, the Palmeri's were under the reasonable belief that Tracey's breast cancer had been treated and removed, and that she would continue to lead a healthy life. Plaintiff argues that Tracey's subsequent diagnosis of metastatic breast cancer in her liver, bone, and lymph nodes was a new injury sufficient to commence or restart the limitations period on October 22, 2020. (*Id.*)

However, both the New York Court of Appeals and the Second Circuit have recognized that the worsening of a plaintiff's condition or symptoms over time does not alter or postpone the accrual date for purposes of CPLR § 214-c(2). *See Bano v. Union Carbide Corp.*, 361 F.3d 696 (2d Cir. 2004); *Whitney v. Quaker Chemical Corp.*, 90 N.Y.2d 845, 847 (1997). Instead, "[a]ll that is necessary to start the limitations period [of 214-c(2)] is that plaintiff be aware of the *primary condition* for which damages are sought." *Whitney*, 90 N.Y.2d at 847 (emphasis added).

Indeed, New York courts have specifically held that the aggravation, acceleration, or metastasis of a disease does not represent a separate or distinct injury for purposes of computing the statute of limitations pursuant to CPLR § 214-c(2). For example, in *Dugan v. Schering Corp.*, 86 N.Y.2d 857 (1995), the decedent's mother took dienestrol, a synthetic estrogen drug, while pregnant with the decedent. In 1976, the decedent was diagnosed with clear cell adenocarcinoma of the cervix and underwent a radical hysterectomy. *Id*. The decedent remained disease-free until 1990, at which time she was diagnosed with clear cell adenocarcinoma metastatic from the primary cervical cancer, causing her death in 1991. *Id*. The decedent's husband then commenced an action against the manufactures of dienestrol, which was ultimately dismissed as untimely. *Id*.

The Appellate Division concluded, and the New York State Court of Appeals agreed, that plaintiff's 1990 metastatic cancer diagnosis was not a separate injury for statute of limitations purposes. *Id.*

Similarly, in *Sweeney v. General Painting*, 210 A.D.2d 865 (3d Dep't 1994), plaintiff was diagnosed with bladder cancer in 1978, but did not commence a lawsuit until 1989, after losing his bladder and learning that the cancer may have been caused by his exposure to printing inks manufactured by defendant. The Third Department dismissed the case as untimely pursuant to CPLR § 214-c(2), rejecting plaintiff's argument that the progression of his initial low grade tumors to more invasive tumors, resulting in the loss of his bladder, was a separate injury. *Id.* The Third Department explained that plaintiff "suffered only one disease, bladder cancer, and hence, one injury, which he realized, at the latest, when he was diagnosed with it in 1978." *Id.*

Like the injured parties in *Dugan* and *Sweeney*, plaintiff's personal injury claim, brought on behalf of Tracey, began to accrue on January 23, 2018, when Tracey was diagnosed with breast cancer, the primary condition on which the personal injury claim is based. Based on the case law discussed above, Tracey's October 22, 2020 diagnosis of metastatic breast cancer, an outgrowth or worsening of Tracey's initial cancer diagnosis, is not a separate and distinct injury for statute of limitations purposes.

Plaintiff submits that constructive discovery of an injury, as well as whether an asserted injury is an outgrowth of a previously discovered injury, is a mixed question of law and fact that cannot be resolved on a motion to dismiss. To that end, plaintiff correctly notes that *Sweeney* and *Dugan* involved motions for summary judgment, rather than motions to dismiss. To be sure, New York courts have held that "[w]here it does not

12

conclusively appear that a plaintiff had knowledge of facts from which the injury could be reasonably inferred, the complaint should not be dismissed on motion and the questions should be left to the trier of fact." *Glod v. Morrill Press Division of Engraph, Inc.*, 168 A.D.2d 954, 956 (4th Dep't 1990). But that is not the situation the Court is faced with here.

Considering as true all allegations contained both in the complaint and in Palmeri's affidavit, and drawing all reasonable inferences in plaintiff's favor, the record here conclusively shows that plaintiff and Tracey had knowledge of the primary condition on which the personal injury claim is based on January 23, 2018. Tracey was diagnosed with Stage 1 breast carcinoma on January 23, 2018. (Dkt. No. 9-2, ¶ 3) She underwent a bilateral mastectomy followed by regular monitoring of her condition. (*Id.*) After a breast scan in August of 2020 showed areas of concern, Tracey and plaintiff "learned that *the cancer had returned* and was beginning the spread." (*Id.* at ¶ 11, emphasis added) A September 2020 PET/CT scan showed preliminary findings of metastatic breast cancer. (*Id.* at ¶ 3) On October 8, 2020, a biopsy of Tracey's liver and abdominal ultrasound showed that she was suffering from a metastatic carcinoma. (*Id.*) Medical records from October 22, 2020 indicate that Tracey was diagnosed metastatic breast cancer and that she was seeking treatment for "newly diagnosed breast cancer to the liver, bone, and lymph nodes." (Dkt. No. 9-3, pg. 13)

Here, it clear from the record that the "new" diagnosis related to a worsening, spreading, or outgrowth of Tracey's initial breast cancer to other parts of the body, and not to the discovery of a new injury or new disease.[6] Indeed, it is undisputed that the

---

[6] The National Cancer Institute defines "metastasize" as "[t]o spread from one part of the body to another. When cancer cells metastasize and form secondary tumors, the cells in the metastatic tumor are like those in the original (primary) tumor." *See* https://www.cancer.gov/publications/disctionaries/cancer-terms/def/metastasize.

cause of Tracey's death was metastatic adenocarcinoma of the breast and locoregional breast cancer. (Dkt. No. 9-2, ¶ 16)  Thus, like the plaintiff in *Sweeney*, Tracey suffered from one disease, namely breast cancer, and hence, one injury, which she and plaintiff learned of on January 23, 2018.

Because Tracey's injury was discovered on January 23, 2018, she had until approximately January 23, 2021 to file a personal injury lawsuit against defendant for the disposal of radioactive waste on the Palmeri property, pursuant to CPLR § 214-c(2). The instant lawsuit was filed in April of 2024. Thus, the personal injury claim asserted by plaintiff, on Tracey's behalf, is untimely.

As noted above, wrongful death claims are usually timely if filed within two years after the decedent's death. However, wrongful death claims cannot be maintained if the underlying statute of limitations has expired or the claim was not otherwise viable at the time of the death. Here, Tracey died on April 25, 2022, at which time her personal injury claim had already expired. Thus, the wrongful death claim is also untimely. *See Helgans v. Plurad*, 255 A.D.2d 554 (2d Dep't 1998) (having concluded that the plaintiff's action to recover damages for medical malpractice is time-barred, it follows that the court properly denied that branch of the plaintiff's motion which sought leave to amend the complaint to add a cause of action to recover damages for wrongful death); *Graves v. Brookdale Univ. Hosp. & Med. Ctr.*, 177 A.D.3d 553 (1st Dep't 2019) ("[S]ince the statute of limitations on the medical malpractice cause of action expired before the decedent's death and the wrongful death action as predicated on malpractice, that cause of action was also time-barred.").

A damages claim for latent injury to property resulting from the seepage or infiltration of a toxic substance over time is also governed by the three-year limitations period set forth in CPLR § 214-c. *See Bano*, 361 F.3d at 709. Such a claim accrues when the plaintiff first discovers the property damage. *Id*. Here, the record conclusively establishes that plaintiff discovered damage to the Palmeri property, at the latest, in October of 2017, when he filed a lawsuit seeking recovery for property damage as a result of radioactive waste disposed at the Palmeri property. Thus, plaintiff's claim for property damage is also untimely.

### CPLR § 214-c(4)

In certain instances, CPLR § 214-c(4) provides a plaintiff in toxic tort cases an additional one year to bring a claim for personal injuries or property damage, measured from the date of discovery of the *cause* of the injury, as opposed to the date of discovery of the injury itself. In order for this extension to apply, the discovery of the cause of the injury must occur less than five years after the date of discovery of the injury, and plaintiff must plead and prove that "the technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would been authorized." *See* CPLR § 214-c(4). For the following reasons, the Court finds that CPLR § 214-c(4)'s one-year extension of the limitations period, measured from the date the cause of the injury is discovered, does not render the complaint timely.

In *Giordano v. Market Am., Inc.*, 15 N.Y.3d 590 (2010), the Court of Appeals explained that "technical, scientific or medical knowledge and information sufficient to ascertain the cause of [the plaintiff's] injury" is "discovered, identified or determined" within

15

the meaning of the statute, when the existence of the causal relationship is generally accepted within the relevant technical, scientific or medical community. *Id.* at 600. The *Giordano* Court then specifically instructed that CPLR § 214-c(4) refers only to when information is sufficient for the technical, medical, or scientific community to ascertain the cause of an injury, and that it would not be reasonable to extend the statute of limitations until the time when a reasonable lawyer or layperson could ascertain the cause without consulting an expert. *Id.* Stated another way, the relevant consideration here is when the scientific or medical community had sufficient knowledge to ascertain a link between cancer and radioactive waste, and not when plaintiff himself had specific knowledge of the connection.

The allegations in the complaint and the statements in Palmeri's affidavit fail to establish that, prior to the expiration of three-year limitations period set forth in CPLR § 214-c, there was insufficient technical, scientific, or medical knowledge to ascertain a link between radioactive waste and cancer. *See Martin*, 3 A.D.3d at 439-40 (dismissing plaintiff's claim that she suffered respiratory, immunological, and neurological problems based on exposure to black mold in her apartment as untimely, and finding that CPLR § 214-c(4) did not apply to extend the statute of limitations because plaintiff had "not alleged that the medical or scientific community in general lacked information that molds such as those [in her apartment] could be the cause of her illness.").[7]

Furthermore, even if the Court were to consider when plaintiff and Tracey themselves had sufficient knowledge to ascertain a link between the injuries alleged in

---

[7] Plaintiff has also failed to allege that, prior to the expiration of the three-year statute of limitations, the scientific or technical community lacked sufficient information that the disposal of radioactive wastes causes property damage.

the complaint and the exposure to radioactive waste, as opposed to when the medical or scientific community would have possessed such knowledge, the lawsuit remains untimely. Tracey was initially diagnosed with breast cancer in January of 2018. Just a few months prior to that diagnosis, in October of 2017, plaintiff filed a lawsuit alleging that there was radioactive waste buried on his property which caused adverse health consequences. He sought medical monitoring as a result of such exposure. In October of 2019, the Palmeri's notified the NYSDOH of radiation concerns at their property. The EPA performed a removal-site evaluation in November of 2020, determining, at that time, that there was an unacceptable cancer risk to residents at the Palmeri property. In January of 2021, following its determination that the radioactive waste posed an unacceptable cancer risk, the EPA funded the installation of a mitigation system in the Palmeri home. Thus, the allegations in the complaint and in Palmeri's affidavit establish that the Palmeri's would have had information, no later than January of 2021, sufficient to ascertain a link between Tracey's cancer and the radioactive waste present on their property.[8]

Since the allegations here establish that the Palmeri's knew of the likely cause of Tracey's cancer by January of 2021, CPLR § 214-c(4) would have provided them one additional year, from that date, to file suit for Tracey's personal injuries. The instant lawsuit, which was not filed until April 25, 2024, is therefore still untimely. Moreover,

---

[8] Plaintiff argues that the Palmeri's did not learn of the link between Tracey's cancer and the contamination on their property until September of 2021, when Tracey's treating physicians told them, for the first time, that her cancer may be environmentally related. (Dkt. No. 9-2, ¶ 18) However, as explained *supra*, the relevant inquiry for purposes of CPLR § 214-c(4) is when the scientific and medial community possessed the scientific knowledge to ascertain the cause of the injury, not when a plaintiff knew of the link or when a plaintiff was specifically informed, by a member of the scientific or medical community, as to the cause of the injury. Moreover, the allegations in the complaint, the statements in the Palmeri affidavit, and the other information which the Court is permitted to take judicial notice of here, all belie plaintiff's assertion that he did not know, until September of 2021, of the likely link between Tracey's breast cancer and the radioactive waste disposed of at their property.

because the statute of limitations as to the underlying personal injury claims would have expired in January of 2022, the wrongful death claim would not have been viable at the time of Tracey's death on April 25, 2022. Thus, the wrongful death claim also remains untimely.[9]

To the extent plaintiff argues that he did not discover the cause of the injury until September 2023, when the EPA's fingerprinting analysis showed that the radioactive material on the Palmeri property was generated by the defendant, the Court must reject this contention. The New York Court of Appeals has held that "discovery of the cause of the injury" within the meaning of CPLR § 214-c(4) is the same as "discovery that a plaintiff's symptoms were attributable to an outside force." *In re N.Y. County DES Litig.*, 89 N.Y.2d at 513. *See also In re Zyprexa Prods. Liab. Litig.*, 09-CV-1012, 2010 U.S. Dist. LEXIS 49676 (E.D.N.Y. May 19, 2010) (noting that the focus of CPLR § 214-c(4) is on the knowledge of a causal relationship between the substance at issue and the symptoms alleged); *Barrera v. Stewart*, 2013 N.Y. Misc. LEXIS 462 (Sup. Ct. N.Y. Cnty. Jan. 25, 2013) (finding that plaintiffs discovered the cause of the injury, for purposes of CPLR § 214-c(4) when an x-ray revealed that plaintiff's chest pains were caused by the presence of a metallic object in her chest cavity, and "no merit exist[ed] to plaintiffs' claim that it did not know the 'cause' of the injury until it learned that [defendant] was the manufacturer of the pericardial sump from which the metallic object had broken.").

Thus, according to New York state law, it appears that discovery of the "cause" of injury under CPLR § 214-c(4) refers only to a plaintiff's discovery that their injury was the

---

[9] As noted previously, the record here establishes that plaintiff knew of the damage to the Palmeri property at the time he filed the October 2017 lawsuit. He also knew, at that time, that the damage was caused by the disposal of radioactive waste. Thus, the one year extension of time provided in CPLR § 214-c(4) also does not render timely his claim for property damages.

result of exposure to environmental contamination or toxic substance, and not to a plaintiff's discovery of the individual or entity actually responsible for the exposure. Indeed, plaintiff has not cited a case where discovery of the "cause" of the injury pursuant to CPLR § 214-c(4) is interpreted to mean discovery of the *causer* of the injury. As a result, the Court finds no legal support for the contention that plaintiff did not discover the cause of Tracey's injury, within the meaning of CPLR § 214-c(4), until he learned that defendant was at fault for the radioactive waste deposited on the Palmeri property. Thus, plaintiff's claims are time-barred.[10]

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss be granted and that the complaint be dismissed as untimely.[11] (Dkt. No. 3)

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

---

[10] The Court notes that while the relevant portion of the CPLR and applicable case law seem to require this result, the Court does not find it to be a fair result. The facts of this case involve the tragic death of a 44-year-old woman, allegedly caused by toxic materials buried underneath her home, decades before she moved there. While it has not been proven that defendant was responsible for the radioactive waste that caused Tracey's cancer, the complaint alleges that defendant's connection to the contamination was not discovered by plaintiff until September of 2023. Thus, even though Tracey was diagnosed with cancer in January of 2018, plaintiff did not learn of the party allegedly responsible for Tracey's illness until over five years later, at which time the statute of limitations had run, Tracey had died, and plaintiff was left without any legal recourse. Defendant emphasized, during oral argument, that the Palmeri's discovery of the cancer in 2018 as well as the pre-removal actions taken by the EPA in 2020 and early 2021 triggered plaintiff's duty to investigate, in order to find the responsible party. But the complaint alleges that the source of contamination was not identified until the EPA conducted a large scale removal effort, extracted 4,800 tons of contaminated soil from the property, and unearthed plates allegedly belonging to defendant. In light of these alleged facts, it is unclear to the Court how the Palmeri's themselves, even acting diligently, could reasonably have identified a party to sue prior to the expiration of the statute of limitations provided in the CPLR.

[11] Defendant argues, in the alternative, that plaintiff has failed to state any viable claim on which relief may be granted. (Dkt. No. 3-5, pgs. 10-20) Because the Court finds that the complaint should be dismissed as time-barred, it does not address defendant's arguments as to the sufficiency of plaintiff's substantive allegations. Should the District Court decline to adopt this Court's recommendation that the complaint be dismissed as untimely, the case may be referred back to this Court for consideration of defendant's alternative arguments in favor of dismissal.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

Dated:      March 12, 2025
               Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge