UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHILIP S. PALMERI, Individually
and as Administrator of the Estate of
TRACEY L. PALMERI, Deceased,

        Plaintiff,

v.

NL INDUSTRIES, INC.,

        Defendant.
_____

          1:24-CV-00556 JLS (MJR)

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF OBJECTIONS TO REPORT AND RECOMMENDATION**

STAMM LAW FIRM

Brian G. Stamm, Esq.
*Attorneys for Plaintiff*
1127 Wehrle Drive, Suite 100
Williamsville, NY 14221
(716) 631-5767

HARTER SECREST & EMERY LLP

John G. Horn, Esq.
*Attorneys for Plaintiff*
50 Fountain Plaza, Suite 1000
Buffalo, New York 14202
(716) 844-3728

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| TABLE OF AUTHORITIES | II |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
|     I. The Magistrate Judge incorrectly applied the cause-discovery provision of CPLR § 214-c(4). | 2 |
|     II. The Magistrate Judge's determination as a matter of law that Plaintiff's fatal injury was discovered on January 23, 2018 was clear error. | 6 |
| CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Annunziato v. City of New York*,
  624 N.Y.S.2d 544 (Sup. Ct., Richmond Cty., 1995) ...................................................................4

*Annunziato v. City of New York*,
  224 A.D. 2d 31 (2d Dep't 1996) ..................................................................................................3

*DiStefano v. Nabisco, Inc.*,
  282 A.D.2d 704 (2d Dep't 2001) .................................................................................................7

*O'Brien v. County of Nassau*,
  164 A.D.3d 684 (2d Dep't 2018) .................................................................................................7

*Olmstead v. Bayer Corp., et al.*,
  2017 U.S. Dist. LEXIS 129222 (N.D.N.Y. Aug. 15, 2017) .........................................................6

*Suffolk County Water Auth. v. Dow Chem. Co.*,
  129 A.D.3d 50 (2d Dep't 2014) ...................................................................................................6

*Wetherill v. Eli Lilly & Co. (In re N.Y. County DES Litig.)*,
  89 N.Y. 2d 506 (1997) ........................................................................................................2, 3, 4

**STATUTES**

CPLR § 214-c(2) ..............................................................................................................................1

CPLR § 214-c(4) ....................................................................................................................1, 2, 3, 5

EPTL § 5-4.1 ...............................................................................................................................3, 5

**OTHER AUTHORITIES**

Alexander, McKinney Practice Commentary, N.Y. C.P.L.R. 214-c (2019) ...................................5

McLaughlin, Practice Commentaries, McKinney's Cons Laws (1987) .........................................3

**PRELIMINARY STATEMENT**

Rather than address the merits of Plaintiff's Objections to Magistrate Judge Roemer's Report and Recommendation, NLI's Response (Dkt. No. 19) takes issue with what Defendant asserts is Plaintiff's failure to have identified the "clear error" in the Report and Recommendation. As with the arguments underpinning NLI's underlying Motion to Dismiss, this criticism well misses the mark. Plaintiff's Objections identify two fundamental and crystal-clear errors in the Report and Recommendation.

First, the Magistrate failed to credit Plaintiff's showing that there existed no causal link in the relevant scientific and medical communities between NLI's admittedly unique radioactive waste and the metastatic carcinoma that killed Tracey Palmeri until at least July 2023. That error led directly to the Court's conclusion that Plaintiff's action is time-barred because it was not brought within one year of the discovery of the cause of Tracey's fatal cancer.

Second, the Magistrate erred in concluding as a matter of law on a pre-answer motion to dismiss that Tracey Palmeri's January 2018 diagnosis of stage 1 breast cancer was the same "injury" for statute of limitations purposes as the October 2020 diagnosis of the metastatic carcinoma that would take her life 18 months later. Notably as regards CPLR § 214-c(4), neither diagnosis identified the cause of either cancer to be "attributable to an injury inflicted by an outside force" as NLI contends (*see* Dkt. 19 at 9), let alone to NLI's unique radioactive waste. But equally erroneous was the Magistrate Judge's failure to acknowledge that Plaintiff's allegations, coupled with Tracey's medical records, suffice to, at very least, create a question of fact as to whether the two cancer diagnoses pertained to the same or different injuries.

ARGUMENT

I. **The Magistrate Judge incorrectly applied the cause-discovery provision of CPLR § 214-c(4).**

At page 8 of its Response, NLI asserts that Magistrate Judge Roemer correctly rejected "Plaintiff's contention that discovery of the 'cause' of injury under CPLR § 214-c(4) refers to when a party discovers the individual or entity actually responsible for the exposure." NLI goes on to characterize Plaintiff's argument as "nothing new or novel," the same "cause vs. causer argument that was briefed in the motion papers." *Id.* NLI is demonstrably incorrect.

Plaintiff has never argued that CPLR § 214-c(2) allows for someone exposed to radioactive contamination to have five years from the date the injury is discovered to identify the "causer" of the injury. What Plaintiff argues is (a) that he timely commenced the action once he had sufficient information to discover the cause of Tracey's fatal injury and (b) that NLI's specific and unique radioactive waste—not a *generic* defendant's *generic* radioactive waste— was the cause of that injury. (*See* Dkt. No. 17 at 11 ("the 'relevant consideration here' is not 'when the scientific or medical community had sufficient knowledge to ascertain a link between cancer and radioactive waste,' but when the 'scientific or medical community' had sufficient knowledge to ascertain a link between the cancer that killed Tracey Palmeri and the specific and actual cause of the cancer, which Plaintiff has alleged—forcefully and unambiguously—was NLI's radioactive waste, the identification of which was not known, and could not have been known, before the summer of 2023")).

The cases relied upon by NLI do not command dismissal; indeed, they and the statute itself require a finding that Plaintiff's wrongful death case is timely because it was brought within one year of discovery of the cause of the injury and that cause was not known or knowable within three years of Plaintiff's earliest diagnosis. In *Wetherill v. Eli Lilly & Co. (In re*

2

*N.Y. County DES Litig*.), 89 N.Y. 2d 506 (1997), the New York Court of Appeals analyzed the legislative history of CPLR § 214-c(4) and determined that, "[a]s is apparent from the above-quoted language, the Legislature anticipated and made specific provision for the problem that arises when the plaintiff has discernible bodily symptoms but the toxic etiology of those symptoms has not yet been discovered." *Id.* at 512. According to the Court of Appeals, CPLR § 214-c(4) "expressly provides for situations in which the plaintiff was aware of the 'injury' itself but there was a delay in the discovery of its 'cause.'" *Id*. at 511. In concluding that the plaintiff's case was untimely, the Court in *Wetherill* relied on the fact that the linkage between diethylstilbestrol ("DES") and the "abnormalities and pathological condition in some of its users' female offspring" was well known within and among the relevant scientific and medical communities when the plaintiff learned, after successive miscarriages spanning a decade, that her mother had taken DES during the plaintiff's pregnancy. *Id.* at 509. In this case, Plaintiff has demonstrated that there was not, and could not have been, a known linkage between NLI's radioactive waste and Tracey Palmeri's fatal cancer within three years of Plaintiff's January 2018 diagnosis of stage 1 breast cancer. Instead, as Plaintiff has alleged and the record bears out, it was not until EPA connected the dots in the summer of 2023 that *anyone* in the relevant scientific or medical communities *could* have connected those dots.

As set forth in Plaintiff's Objections at pages 12 through 14, even if the date of discovery of Tracey Palmeri's fatal injury can reasonably be said to be January 2018, she died within five years of that diagnosis in April 2022. And neither the diagnosis of stage 1 breast cancer in January 2018, which was successfully treated in February 2018, nor the diagnosis of the metastatic carcinoma in October 2020 constituted a "discovery that a plaintiffs [*sic*] symptoms were attributable to an injury inflicted by an outside force" as NLI contends. *See* Dkt. No. 19 at

3

9. It would not be until September 2021, after the Palmeris reported to their treatment team at Roswell Park Comprehensive Care Center that they had been forced out of their home by USEPA, that they were advised that Tracey's newly diagnosed carcinoma could be related to that radioactive contamination. (Dkt. 9-2, ¶ 14.) But even then, there was no diagnosis linking the injury with an external cause. On the other hand, if that September 2021 exchange with a medical provider could be said to constitute the sort of diagnosis contemplated by *Wetherill* and the other cases on which NLI relies, Plaintiff's claim would be timely because Tracey Palmeri died within seven months of that September 2021 conversation, at which time the two-year wrongful-death statute of limitations in EPTL § 5-4.1 was triggered.

NLI criticizes Plaintiff's theory of timeliness as "impractical, unworkable, and [certain to] introduce a flood of uncertainty into the statute of limitations thereby undermining the purpose of the statute of limitations as articulated by the Supreme Court." Dkt. No. 19 at 9-10.

Not so.

Plaintiff fully acknowledges that "[t]he statute does not contemplate that a plaintiff may in effect indefinitely toll the Statute of Limitations while searching for the cause of injury." *Annunziato v. City of New York*, 224 A.D. 2d 31, 39 (2d Dep't 1996). In other words, "[i]f a plaintiff does not discovery the cause within five years of discovery of the injury, the issue of whether it was possible to discover the cause sooner is irrelevant." *Id.* But where, as here, a plaintiff commences an action within five years of the earliest possible date the injury was discovered (as extended by operation of EPTL § 5-4.1), and thereafter establishes that the alleged causal connection between the subject injury and exposure to radioactive waste could not have been discovered within three years from the discovery of the injury, CPLR § 214-c(4)'s two

4

criteria have been met. While the Second Department did not reach this question in *Annunziato*, the trial court's analysis is instructive.

After quoting at length from McLaughlin, Practice Commentaries, McKinney's Cons. Laws of NY, Book 7B, CPLR C214-c:4 (1987), the trial court noted that, consistent with the Practice Commentaries and the statute's legislative history, "[t]he term 'cause of the injury should be given a meaning consistent with the thrust of the statute and should imply that the plaintiff has **sufficient knowledge to bring an action**." *Annunziato v. City of N.Y.*, 624 N.Y.S.2d 544, 546-47 (Sup. Ct., Richmond Cty., 1995) (emphasis supplied). Because the plaintiffs in *Annunziato* had demonstrated that there was no established linkage in the medical or scientific community between their injuries and the toxic chemicals to which they alleged exposure, the court concluded that

> the statutory concept of discovery of the "cause of the injury" within the context of determining whether plaintiffs have sufficient knowledge to bring an action includes identification of the substance to which plaintiffs were allegedly exposed. It may very well also include knowledge of the identity of the correct defendant. There is nothing in the statute, or the legislative history thereof, to suggest that either of these approaches is more or less paramount than the other.

*Id.* at 548.

In this case, it is undisputed that Plaintiff never received a clear and definitive diagnosis that any environmental exposure was the cause of Tracey's fatal cancer, let alone that NLI's unique radioactive waste was the culprit. As detailed on pages 12 and 13 of Plaintiff's Objections and reintroduced above, it was not possible for anyone in the relevant scientific or medical communities to have identified a causal connection between NLI's waste and Tracey's death until USEPA had (a) commenced excavation activities in 2021, (b) discovered the metal plates bearing the name of NLI's corporate predecessor in 2022, (c) conducted fingerprinting analyses

5

of samples collected from the Palmeri property in April 2023, and (d) analyzed the historical documents NLI produced in July 2023 indicating, in Defendant's own words, that it was the only U.S. producer of one of the unique chemicals identified on the Palmeris' property. This unrebutted showing by Plaintiff is entirely consistent with *Wetherill*, *Annunziato*, and even the more recent Practice Commentary cited by NLI: "To take advantage of the one-year extension, therefore, the plaintiff must show that it was not generally accepted in the scientific community that toxic substance x (to which she was exposed) can cause injury (plaintiff's condition), at the time of, and for three years following, the discovery of her condition." Alexander, McKinney Practice Commentary, N.Y. C.P.L.R. 214-c (2019). That is precisely what Plaintiff has shown.

In sum, the Court should reject NLI's contrived cause vs. causer dichotomy because it distorts the intent and ignores the words of CPLR § 214-c(4). Plaintiff has alleged, unambiguously and repeatedly, that the specific and actionable cause of his wife's death was NLI's unique radioactive waste, a claim he did not have sufficient information to make until July 2023 at the earliest. Because the five-year outer limit for discovery of the cause of injury under CPLR § 214-c(4) had not expired by the time of Tracey's death on April 25, 2022, her husband had two years from the date of her death under EPTL § 5-4.1, and one year from the date the cause was discovered, to bring this action. Commencement of this lawsuit on April 25, 2024 satisfied both CPLR § 214-c(4) and EPTL § 5-4.1, and was therefore timely.

**II.   The Magistrate Judge's determination as a matter of law that Plaintiff's fatal injury was discovered on January 23, 2018 was clear error.**

Contrary to the arguments in NLI's Response, the Magistrate Judge committed clear error in concluding on NLI's pre-answer Motion to Dismiss that Tracey Palmeri suffered a single injury and that the stage 1 breast cancer with which she was diagnosed in January 2018 is "the primary condition on which Plaintiff's claim is based." This is clear error because Tracey's

6

medical records specifically reference "***newly diagnosed*** breast cancer to the liver, bone, and lymph nodes" on October 22, 2020. (Dkt. No. 9-3 at 13 (emphasis supplied).) And, as Plaintiff has alleged credibly and consistently since the inception of this action, it was this new disease that caused his wife's death on April 25, 2022.

      NLI cites several cases in opposition to Plaintiff's argument that the Magistrate Judge's conclusion regarding a single "worsening injury" was improperly reached on a pre-answer Motion to Dismiss. Each is readily distinguished from this case. In *Olmstead v. Bayer Corp., et al.*, 2017 U.S. Dist. LEXIS 129222 (N.D.N.Y. Aug. 15, 2017), the Court noted that the plaintiff's "complaints of pain in 2016 are qualitatively similar to the injuries she allegedly suffered as early as 2013. Furthermore, the alleged coil protrusion is merely an outgrowth, maturation, or complication of original contamination." *Id*. at 5. In this case, there are no "qualitatively similar" complaints of pain. Tracey had successful surgery in February 2018, after which there were no "complaints of pain." Following the October 2020 diagnosis of metastatic carcinoma, the medical records show, the pain was new, different, and unabated, resulting 18 months later in her death.

      In *Suffolk County Water Auth. v. Dow Chem. Co.*, 129 A.D.3d 50 (2d Dep't 2014), the Court noted that the plaintiff's alleged damages were of the same nature and that the movants had established, prima facie, that the damages sustained were an outgrowth, maturation, or complication of the original contamination and not a separate and distinct injury. The court also noted the absence of any evidence raising an issue of fact as whether the damages sustained were qualitatively different from that sustained earlier. That finding followed discovery and the submission of competing evidence, all of which was considered on a motion for summary judgment, not on a pre-answer motion to dismiss. In this case, Defendants have not established in

7

any way, shape, or form that Tracey's fatal cancer was merely an outgrowth, maturation, or complication of her earlier injury. Indeed, Plaintiff's allegations and medical records show that just the opposite is true.

Similarly, in *O'Brien v. County of Nassau,* 164 A.D.3d 684 (2d Dep't 2018), the court found that "the two injury rule is inapplicable as Plaintiff failed to show that the injuries allegedly sustained within the limitations period were separate and distinct and qualitatively different from those sustained earlier." *Id*. at 687. That case of asbestos exposure is clearly different than the case at bar, in large measure because there has been no discovery and therefore no opportunity for either party to offer any evidence for the court's consideration. Lastly, *DiStefano v. Nabisco, Inc.*, 282 A.D.2d 704 (2d Dep't 2001), is distinguishable because it dealt with diminution in property values as a result of contamination and not a physical injury sustained by the plaintiff.

## CONCLUSION

For the reasons set forth above and in Plaintiff's Objections to the Report and Recommendation (Dkt. No. 17), Plaintiff respectfully requests that this Court reject the Magistrate Judge's Report and Recommendation in its entirety and deem this action timely.

Dated: April 17, 2025
      Buffalo, New York

                                                Harter Secrest & Emery LLP

By: _____
     John G. Horn, Esq.
     *Attorneys for Plaintiff*
     50 Fountain Plaza, Suite 1000
     Buffalo, New York 14202
     (716) 844-3728

     Brian G. Stamm, Esq.
     STAMM LAW FIRM
     *Attorneys for Plaintiff*
     1127 Wehrle Drive, Suite 100
     Williamsville, NY 14221
     (716) 631-5767